**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CYNTHIA A. WAITE,**[1]

        **Plaintiff,**

   v.                             **1:05-CV-00720**
                                                   **(GLS/RFT)**

**UNITED STATES OF AMERICA,**

        **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| OFFICE OF ROBERT A. BECHER<br>5 Wilson Street<br>Albany, New York 12207 | ROBERT A. BECHER, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. GLEN T. SUDDABY<br>Office of United States Attorney<br>445 Broadway<br>218 James T. Foley U.S. Courthouse<br>Albany, New York 12207 | BARBARA D. COTTRELL<br>Assistant U.S. Attorney |

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

_____

[1] Waite's husband, Edward Waite, was previously terminated from this action. *See Dkt. No. 12.*

## I. Introduction

Cynthia Waite brings this claim under the Federal Torts Claim Act, *see* 28 U.S.C. § 2671, *et seq*. (FTCA), for injuries sustained when she fell in the parking lot outside the Phillip Schuyler House located in Saratoga Historical National Park. *See Dkt. No. 1*. Pending is defendant's motion for summary judgment. *See Dkt. No. 9.* For the following reasons, defendant's motion is granted.

## II. Background[2]

Located in Saratoga National Historical Park*,* the Schuyler House was built in 1777 and is open to the public for guided tours. *See Def. SMF ¶3, Dkt. 9.* Typically, tours end before 5pm, and the Schuyler House is closed to the public at night. *See id.* Since the House is preserved as a historical structure, it lacks electricity and other modern conveniences. *See id.* at *¶*4. However, for the past twenty years, the Park opens the grounds up to the public after hours to conduct candlelit tours of the House from 6pm-9pm. *See id.* at *¶*5*.* The candlelit tour date is the only night a year

---

[2]On November 28, 2006, the court heard oral argument on defendant's motion. At the conclusion of the hearing, the court ordered the government to supplement its statement of material facts to address the issue of lighting in the parking lot. *See Dkt. No. 12.* In defining the undisputed material facts, the court looks to both parties' original statements, *see Dkt. Nos. 9, 10,* in addition to their supplemental statements. *See Dkt. Nos. 14, 16.*

2

that the Schuyler House is open to the public. *See Def. SMF ¶8, Dkt. 9.* This event is held to commemorate the anniversary of the Battle of Saratoga, which occurred in October of 1777. *See id.* at *¶6.*

On October 18, 2003, Waite and her daughter attended the annual candlelit tour. *See id.* at *¶10.*[3] On her way back to the parking lot after the tour, Waite did not use the main lit walkway leading up to the Schuyler House but instead traversed unlit grounds to return to her car. *See id.* at *¶14.*[4] At approximately 7pm, after saying goodnight to a Park attendant, Waite fell from the sidewalk/curb located on the grounds leading into the parking lot. *See Def. SMF ¶10, Dkt. 9.*[5] Immediately thereafter, the attendant asked Waite if she was OK. *See id.* at *¶17.* She answered in the affirmative and proceeded to her car. *See id.* After the event, Waite

---

[3]As part of its publicity for the candlelight tour, the Park Service issued a press release advising visitors to the Schuyler House to bring a flashlight since the grounds were unlit. *See Press Release, Ex. 2; Dkt. No. 9.* Waite argues that she never read this particular press release. However, she was aware that the tour would be at night and by candlelight. *See Waite SMF ¶9, Dkt. No. 10.*

[4]Waite does not dispute the fact that she did not use the main lit walkway. Instead, she maintains that she could not do so because others were lined up, blocking the way, waiting for the next tour. *See Waite SMF ¶14, Dkt. No. 10.*

[5]Defendant contests Waite's characterization of the walkway as "elevated" in the complaint. Defendant notes that the walkway is simply designed so that it is a few inches higher than the parking lot, the same as the normal curb placement from a parking lot to adjacent land. Defendant also notes that Waite has confirmed the appearance of the curb as shown in photographs. *See Photo, Ex. 6; Dkt. No. 9.*

3

sought medical attention for arm pain.  *See id.* at ¶*18*.  X-rays revealed that she had sustained a fracture in her right forearm and shoulder trauma. *See Def. SMF ¶18, Dkt. No. 9.*

Waite now claims that she fell because the curb was inadequately lit and that artificial lighting in the parking lot would have prevented her injuries.  *See id.* at ¶*11.*[6]  Defendant maintains that the introduction of comtemporary lighting devices would compromise the visitor experience and tradition of the candlelit tour program.  *See Def. Supp. SMF ¶6, Dkt. No. 14.*

### III.  Discussion

### A.    Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing FED. R. CIV. P. 56(c)); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d

---

[6]Fourteen parking lots have been constructed within the Park, but none are equipped with parking lot lights.  *See Def. Sup. SMF ¶¶14-15, Dkt. No. 14.*  The only area with artificial lighting within the Park is directly adjacent to the Visitor Center.  *See id.* at ¶5.

165,170 (2d Cir. 2006) (citation omitted). All reasonable inferences must be drawn in favor of the nonmoving party. *See Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (citation omitted); *see also SEC. v. Kern*, 425 F.3d 143, 147 (2d Cir. 2005). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group*, *Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). However, "[c]onclusory allegations, conjecture and speculation...are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998).

**B.     The Federal Torts Claim Act and Sovereign Immunity**

"Under traditional principles of sovereign immunity, the United States is immune from suit except to the extent the government has waived its immunity." *Coulthurst v. U.S.*, 214 F.3d 106, 108 (2d Cir. 2000). The Federal Torts Claim Act (FTCA) waives sovereign immunity for torts arising

5

or resulting from "the negligent or wrongful acts or omissions of any employee of the Government while acting within the scope of his employment." 28 U.S.C. § 2679(b)(1); *Coulthurst*, 214 F.3d at 108. However, the discretionary function exception places a significant limitation on the FTCA's waiver of immunity. *See* 28 U.S.C. § 2680(a). Specifically, the exception provides that suit under the FTCA shall not apply to "...[a]ny claim...based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of...an employee of the Government...." 28 U.S.C. § 2680(a). Moreover, if a claim falls within the discretionary function exception, the District Court lacks subject matter jurisdiction because the government has not effectively waived its sovereign immunity. *See Fazi v. U.S.*, 935 F.2d 535, 537 (2d Cir. 1991).

**C.    Discretionary Function Exception**

First, the overall purpose of the discretionary function exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Cohen v. U.S.*, 98-CV-2604, 2004 WL 502924, at *5 (E.D.N.Y. Jan. 29, 2004) (internal quotation marks and citation omitted). To determine whether the discretionary function exception bars suit, a two-

part test must be applied: "(1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst*, 214 F.3d at 109 (citing *Berkovitz v. U.S.*, 486 U.S. 531 (1988) & *U.S. v. Gaubert*, 499 U.S. 315 (1991)).[7]

Here, there is no policy that requires the Park to light its parking lots. In fact, of the fourteen parking lots in the Park, none have artificial lighting. *See Def. Supp. SMF ¶¶4-5, Dkt. No. 14.* This is mainly due to the fact that the Park is primarily used for daytime activities and sight-seeing. *See id.* at *¶¶1-3*. The Schuyler House itself is not typically open for visitors past 5pm, and it is only open past 5pm once a year for the candlelit tour. *See id.* at *¶¶5-6.* Since no statute or policy requires the Park to light the Schuyler House and its surrounding area at night, the decision to do so is discretionary. Therefore, the government has satisfied the first prong of the *Berkovitz-Gaubert* test.

The second prong of the *Berkovitz-Gaubert* test requires that the decision be grounded in public policy considerations or be susceptible to

---

[7]This standard is commonly referred to as the *Berkovitz-Gaubert* test.

policy analysis.  *See Coulthurst,* 214 F.3d at 109.  Courts have previously determined that decisions involving the lighting placement and design at historical sites falls under the type of decision-making covered by the discretionary function exception.  *See Brotman v. U.S.,* 111 F. Supp. 2d 418, 426 (S.D.N.Y. 2000) (holding that an action for a slip and fall inside the Statue of Liberty due to poor lighting was barred by the discretionary function exception).  These types of decisions are grounded in policy considerations because they implicate historical accuracy.  *See Shansky v. U.S.,* 164 F.3d 688, 693 (1st Cir. 1999) ("Aesthetic considerations, including decisions to preserve the historical accuracy of national landmarks, constitute legitimate policy concerns[.]").[8]

Moreover, while the Park is required to consider the safety of its visitors, *see Waite Supp. SMF ¶4, Dkt. No. 16*, these concerns do not necessarily trump choices made in furtherance of policy considerations. *See Shansky,* 164 F.3d at 693; *see also Souchet v. U.S.,* 01-CV-2115,

---

[8]The statute creating the National Parks Service provides:

> The service thus established shall promote and regulate the use of the Federal areas known as national parks...which purpose is to conserve...the natural and historic objects...and to provide for the enjoyment...by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1.

...

2004 WL 419905, at *4 (N.D. Ill. Feb. 25, 2004) (holding that decisions regarding safety features at a national fort were grounded in policy considerations and barred by the discretionary function exception); *Cohen*, 2004 WL 502924, at *5 (finding that the decision not to install handrails at a national trail was grounded in policy considerations and barred by the discretionary function exception). Here, the Park's interest in preserving the historical accuracy of the Schuyler House falls into the policy considerations covered by the second prong of the *Berkovitz-Gaubert* test. Therefore, the discretionary function exception applies.

   Waite does not contest that it is within the Park's discretion to light the Schuyler House in accordance with Eighteenth Century standards. She instead argues that since the Park has placed a modern parking lot on the premises, there exists a duty to make the lot reasonably safe. However, this argument is misplaced. The court cannot reach the issue of negligence here because the discretionary function exception bars suit.

   In conclusion, while it is true that a parking lot is inconsistent with Eighteenth Century life, the court must consider not only the lot here but the Schuyler House's overall atmosphere and setting. Ultimately, it is within the Park's discretion to determine how to best preserve this historical

9

site and whether placing artificial lighting in the lot would diminish the overall visitor's experience. Therefore, the discretionary function exception applies, and the defendant is shielded from suit. Accordingly, defendant's motion for summary judgment is granted.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that defendant's motion for summary judgment (*Dkt. No. 9*) is **GRANTED** and Waite's complaint is **DISMISSED IN ITS ENTIRETY** (*Dkt. No. 1)*; and it is further

**ORDERED**, that the Clerk of the Court provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

May 14, 2007
Albany, New York

_____
Gary L. Sharpe
U.S. District Judge